IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTOINETTE ANAYA,

    Plaintiff,

v.                                                                                                1:17-cv-00826-LF

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Antoinette Anaya's Motion to Reverse or Remand (Doc. 17), which was fully briefed on June 27, 2018.  *See* Docs. 19, 24, 25.  The parties consented to my entering final judgment in this case.  Docs. 4, 8, 9.  Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to do a proper function-by-function analysis.  I therefore GRANT Ms. Anaya's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Ms. Anaya was born in 1964, went to school through the 12th grade and then earned a GED, and worked as a convenience store cashier, a restaurant cook/manager, a security guard, and a caregiver/"home attendant." AR 40, 167, 195.[3] She filed an application for Disability Insurance Benefits ("DIB") on July 5, 2013, alleging disability since April 13, 2013 due to blood clots. AR 167–73, 194. The Social Security Administration ("SSA") denied her claim initially on February 13, 2014. AR 112–15. The SSA denied her claims on reconsideration on

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Document 12-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

September 12, 2014. AR 121–26. Ms. Anaya requested a hearing before an ALJ. AR 164. On June 30, 2016, ALJ Lillian Richter held a hearing. AR 36–83. ALJ Richter issued an unfavorable decision on August 4, 2016. AR 14–35.

At step one, the ALJ found that Ms. Anaya had not engaged in substantial, gainful activity from her alleged onset date of April 13, 2013, through her date last insured of March 31, 2015.[4] AR 19. At step two, the ALJ found that Ms. Anaya suffered from the following severe impairments: acute deep venous thrombosis and pulmonary embolism; uterine fibroids; menorrhagia; myalgia with fatigue; and depressive disorder. *Id.* At step three, the ALJ found that none of Ms. Anaya's impairments, alone or in combination, met or medically equaled a Listing. AR 20–23. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Anaya's RFC. AR 23–29. The ALJ found Ms. Anaya had the RFC to

> perform light work as defined in 20 C.FR 404.1567(b) except that she can frequently handle, finger, and feel bilaterally. The claimant cannot balance and should not be exposed to unprotected heights or moving mechanical parts. Additionally, the claimant is limited to simple, routine, repetitive work. She cannot work at an assembly-line production pace but can meet end-of-day goals. Finally, the claimant can have occasional interaction with co-workers and the public and can have frequent interaction with supervisors.

AR 23.

At step four, the ALJ concluded that Ms. Anaya was unable to perform her past relevant work as a "home attendant," or as a manager at a fast food restaurant. AR 28–29. The ALJ found Ms. Anaya not disabled at step five because she could perform jobs that exist in significant numbers in the national economy—such as a photocopy machine operator, a merchandise marker, and a housekeeping cleaner. AR 29–30.

---

[4] The ALJ lists Ms. Anaya's date last insured as both March 31, 2015 and as March 31, 2016. AR 19. Based on other references in the record, the correct date appears to be March 31, 2015. *See* AR 92, 106, 239.

4

On September 19, 2016, Ms. Anaya requested review of the ALJ's unfavorable decision by the Appeals Council. AR 5, 164. On July 20, 2017, the Appeals Council denied the request for review. AR 1–6. Ms. Anaya timely filed her appeal to this Court on August 11, 2017.[5] Doc. 1.

## IV. Ms. Anaya's Claims

Ms. Anaya raises two arguments for reversing and remanding this case: (1) the ALJ failed to do a proper function-by-function analysis, and (2) the ALJ improperly relied on the opinions of the non-examining state agency medical consultants. *See* Doc. 17. For the reasons discussed below, I find that the ALJ failed to do a proper function-by-function analysis, and I remand on this basis. I do not address the other alleged error, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V. The ALJ failed to do a proper function-by-function analysis in formulating Ms. Anaya's RFC.

Ms. Anaya argues that the ALJ failed to do a proper function-by-function analysis. Doc. 17 at 7–8. Specifically, she argues that the ALJ failed to adequately consider limitations in her abilities to stand, walk, and sit. *Id*. The Commissioner argues that a "hyper-technical function-by-function analysis is [not] required," and that Ms. Anaya fails "to point to any evidence showing that the ALJ overlooked any limitations or restrictions." Doc. 19 at 7. For the reasons discussed below, I agree with Ms. Anaya.

Step Four of the sequential evaluation process is comprised of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

---

[5] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2.

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual function capacity (RFC), . . . and in the second phase, he [or she] must determine the physical and mental demands of the claimant's past relevant work. . . . In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. . . . At each of these phases, the ALJ must make specific findings.

*Id*. (internal citations omitted).

An "RFC determines a work capability that is exertionally sufficient to allow performance of at least substantially all of the activities of work at a particular level." SSR 83-10, 1983 WL 31251, at *2 (1983). The RFC must reflect "the maximum amount of each work-related activity the individual can perform," and the ALJ must describe the "individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *7 (July 1, 1996). "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*.

An ALJ may not initially express an RFC in terms of "sedentary," "light," "medium," "heavy," and "very heavy,"—the exertional levels of work. *Id*. at *3. To ensure accuracy, "[t]he RFC assessment must *first* identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id*. at *1 (emphasis added). The ALJ may express the RFC in terms of exertional levels only after performing a function-by-function analysis. *Id*.

A function-by-function assessment is the description of an "individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." *Id.* at *7. Without this initial step "an adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the

6

individual has limitations or restrictions that he or she does not actually have." *Id*. at *4. The ALJ is required to address "an individual's limitations and restrictions of physical strength and define [ ] the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing and pulling." *Id*. at *5. For example, "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours." *Id*. "Each of the seven strength demands must be considered separately." *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. 2003) (unpublished) (citing SSR 96-8p, 1996 WL 374184, at *3–*4).

The Commissioner argues that Ms. Anaya "has failed to point to any evidence showing that the ALJ overlooked any limitations or restrictions." Doc. 19 at 7. The record, however, is replete with evidence indicating that Ms. Anaya has limitations in her ability to stand, walk, and sit. Ms. Anaya testified at the hearing that she has pain in her legs. AR 46–48. She testified that she was hospitalized twice in 2013 for blood clots in her legs, and that she suffered three clots and a ruptured tendon in her left leg. AR 47. She testified that her left leg had permanent bruising, was "always getting swollen," and that she had a constant throbbing pain in her left leg. *Id*. She testified that the pain was exacerbated by "doing too much," and that to alleviate the pain she had to "elevate it a lot and . . . rest a lot." AR 47–48. She testified that she elevated her leg for a minimum of one hour to alleviate the pain. AR 48. She testified that she was unable to sit at her hour-and-45-minute church meetings without getting up to walk around due to discomfort. AR 50. She also testified that she used a wheelchair and crutches to get around for six months after she was hospitalized. AR 65.

In her August 26, 2013 function report, Ms. Anaya stated that she performed household chores such as cleaning and laundry, but that she worked at a "slower pace" and that her leg "gets swollen a lot" and needed to be elevated. AR 228, 230. She reported limitations in her

abilities to stand, walk, and sit due to pain and swelling. AR 233. She reported using a wheelchair to get around, and a cane for balance. AR 234.

On March 14, 2014, after her second hospitalization for blood clots in December of 2013, she reported to the SSA that she had "more anxiety and nightmares; swelling and pain." AR 241, 416–17. In her June 30, 2014 function report, Ms. Anaya stated that she could no longer cook, do laundry, or perform any house or garden chores, noting that she was easily fatigued. AR 258. She reported that she shopped for groceries for 15 minutes once per month. AR 261. She reported that she was able to walk only half a block before needing to rest. AR 263. These limitations were corroborated by her adult daughter. *See* AR 252–55. Her adult daughter reported that Ms. Anaya, who had been her daughter's paid caregiver in the past, was barely able to help care for her any more. AR 251.

In a June 30, 2014 pain questionnaire, Ms. Anaya reported that she had constant body pain, for which she took Tylenol up to eight times a day. AR 267. She reported that all her daily activities, including walking, were limited due to "pain, weakness, and fatigue." AR 268. She reported that she was able to walk for half a block, stand for one to five minutes, and sit fifteen minutes at a time. AR 269.

In an undated report sometime after August 2014, Ms. Anaya reported that she had to "sit and rest every ten minutes if she is standing or walking," that she could "only wear open shoes because close[d] shoes cause to[o] much pain," and that "her left leg becomes too swollen to get in shoe." AR 273. She also reported that her legs were cramping up more often, that her leg pain was worse, and that she had to "constantly elevate her legs." *Id*. She reported that she could no longer stand for over five minutes and that she had installed rails in her bathroom. AR 275.

The medical records also show that Ms. Anaya reported pain and limitations to her medical providers. Ms. Anaya was first admitted to the hospital and diagnosed with acute deep vein thrombosis and a pulmonary embolism on April 14, 2013. AR 308–12. Her chief complaint on admission was "left leg pain for the past one week." AR 308. She had pitting edema on the left lower extremity. AR 310. When she was discharged on April 16, 2013, she still had leg pain. AR 313–14. On a May 21, 2013 visit to the emergency room, she reported that she still suffered from lower extremity pain, stating that "it is no worse than usual." AR 322. Her calf and thigh were noted to be "moderately swollen." AR 324.

Ms. Anaya was hospitalized again in December of 2013 and diagnosed with both acute right lower extremity deep vein thrombosis and chronic left lower extremity deep vein thrombosis. AR 439. Ms. Anaya had "pain on straight leg test of the left leg at an angle between 45 and 60 degrees. The left leg was swollen and warm at the region of the calf as compared to the right leg. She did have tenderness to palpation of her left calf." AR 437. An ultrasound showed a left DVT "extending from mid femoral to popliteal veins." *Id*. The hospital noted that she had bilateral calf tenderness and lower extremity cramps. AR 431, 432.

On a June 14, 2014 visit to Belen Medical, Ms. Anaya reported "significant achiness in legs where prior DVTs were." AR 391. She reported the pain in her legs at a level of seven out of ten. AR 392. She was prescribed T.E.D. Stockings ("Thrombo-Embolic Deterrent Hose"). *Id*. On a June 23, 2014, Ms. Anaya denied having any current leg pain. AR 454. However, on a December 2, 2014 visit to Belen Medical, Ms. Anaya once again reported a pain level of six out of ten in her legs, shoulder, neck, and head. AR 503. She reported being "drained and achy for 1–2 months." AR 502. Ms. Anaya's doctor noted left ankle bruising and edema around the origin of the Achilles tendon. AR 503. On February 26, 2015, Ms. Anaya reported continued

left Achilles pain, and the doctor noted bruising on the ankle and prescribed a splint. AR 526, 537.

On September 16, 2015, Ms. Anaya saw Dr. Gopal Reddy, a vascular surgeon. AR 543–46. She reported "leg swelling symptoms; LEG PAIN WHEN WALKING; NUMBNESS ON ANKLE; BILATERAL NUMBNESS." AR 544. Dr. Reddy found that the "[l]eft distal femoral vein and popliteal vein . . . are still thrombosed," but there was no evidence of new DVT.[6] AR 545. He also noted that Ms. Anaya's "DVT appears to be very well organized and chronic." *Id*. Dr. Reddy concluded that Ms. Anaya had the following:

> Chronic DVT involving the left distal femoral vein, popliteal vein, PTV ["posterior tibial vein"] and peroneal vein.
>
> Chronic STP [Superficial Thrombophlebitis] involving bilateral LSV's [Long Saphenous Veins].
>
> No evidence of any acute recurrent DVT ["Deep Vein Thrombosis"].

*Id*.[7] Dr. Reddy provided Ms. Anaya with instructions on Leg Pain Care. AR 546.

Despite numerous indications in the record that Ms. Anaya has pain and limitations in her ability to walk, stand, and sit, the ALJ never completed a function-by-function analysis. This is legal error and requires remand.

---

[6] A thrombosed blood vessel is one which has a blood clot within it. MERRIAM WEBSTER ONLINE DICTIONARY, available at https://www.merriam-webster.com/dictionary/thrombosis#medicalDictionary (last visited March 25, 2019).

[7] "Thrombophlebitis is an inflammatory process that causes a blood clot to form and block one or more veins, usually in your legs. The affected vein might be near the surface of your skin (superficial thrombophlebitis) or deep within a muscle (deep vein thrombosis, or DVT)." *Mayo Clinic, Thrombophlebitis*, available at https://www.mayoclinic.org/diseases-conditions/thrombophlebitis/symptoms-causes/syc-20354607 (last visited March 25, 2019). Superficial thrombophlebitis can cause tenderness and pain the affected area. Deep vein thrombosis can cause pain and swelling. *Id*.

The Commissioner argues that, under *Hendron v. Colvin*, 767 F.3d 951, 956–57 (10th Cir. 2014), the ALJ was not required to do a "hyper-technical function-by-function analysis." Doc. 19 at 7. *Hendron*, however, is distinguishable.[8] In *Hendron*, the court held that the ALJ did not err by finding that Ms. Hendron could perform a "full range of sedentary work" without an "explicit function-by-function analysis." *Hendron,* 767 F.3d at 956. But the reason the court in *Hendron* did not require an explicit function-by-function analysis was because there was no evidence supporting a limitation on Ms. Hendron's ability to sit during the relevant two-month time period; therefore the analysis was not critical to the outcome of the case. *See id.* at 956–57. Here, however, there is ample evidence supporting limitations in Ms. Anaya's abilities to stand, walk, and sit, and an explicit function-by-function analysis is critical to the outcome of the case. Therefore, the ALJ's failure to perform a function-by-function analysis is legal error. *See also Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015) (remand appropriate when the Court is "left to guess about how the ALJ arrived at his conclusions on [claimant's] ability to perform relevant functions").

The Commissioner takes umbrage with Ms. Anaya's assertion that the "RFC does not include any limitations in standing, walking or sitting." Doc. 19 at 7 (quoting Doc. 17 at 8). The Commissioner argues that the ALJ's limitation to "light work" necessarily limits Ms. Anaya to "standing and/or walking for six hours and sitting for up to two hours in an eight-hour workday." Doc. 19 at 7–8 (citing SSR 83-10, 1983 WL 31251, at *6 ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour

---

[8] The other case the Commissioner cites, *Stone v. Colvin*, No. CIV-14-612-STE, 2015 WL 5231033, at *3 (W.D. Okla. Sept. 8, 2015) (unpublished), is not binding on this Court, and I do not find it persuasive. *See* Doc. 19 at 7.

workday. Sitting may occur intermittently during the remaining time.")).[9] The crux of Ms. Anaya's argument, however, is that the ALJ failed to provide a function-by-function analysis. While "light work" by definition limits standing, walking, and sitting, an ALJ may not initially express an RFC in terms of "sedentary," "light," "medium," "heavy," and "very heavy,"—the exertional levels of work. SSR 96-8p, 1996 WL 374184, at *3. To ensure accuracy, "[t]he RFC assessment must *first* identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id*. at *1 (emphasis added). The ALJ may express the RFC in terms of exertional levels only after performing a function-by-function analysis. *Id*.

Next, the Commissioner urges the Court not to rely on Ms. Anaya's testimony as evidence of limitations in her abilities to stand, walk, and sit. Doc. 19 at 8. She argues that Ms. Anaya did not challenge "the ALJ's assessment of her symptoms," and therefore Ms. Anaya waived the right to challenge this on appeal. *Id*. She further argues that the ALJ "reasonably discounted [Ms. Anaya's] testimony of disabling limitations, based on medical evidence that was inconsistent with her claims, her relatively normal activities of daily living, and her ability to work as a part-time caregiver." *Id*. The Court does not agree that Ms. Anaya has waived her arguments. Further, the ALJ did not adequately consider Ms. Anaya's reported limitations in formulating her RFC.

Ms. Anaya did not waive her right to challenge the ALJ's assessment of her symptoms on appeal. In challenging the ALJ's failure to perform a function-by-function assessment, Ms. Anaya is arguing that the ALJ failed to adequately address those symptoms which limit her

---

[9] *See also* 20 C.F.R. § 404.1567(b) (A job falls in the "light work" category when it "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.").

abilities to stand, walk, and sit. Ms. Anaya did not specifically discuss the ALJ's findings about how her physical activities "are not consistent with [her] alleged" limitations. *See* AR 26. But neither does the Commissioner explain how the ALJ's findings show that the ALJ meaningfully addressed Ms. Anaya's limitations in her abilities to stand, walk, and sit. As discussed below, I find that the ALJ's findings about Ms. Anaya's physical activities do not meaningfully address the limitations in her abilities to stand, walk, and sit. Thus, Ms. Anaya's failure to attack these findings does not result in a waiver of her right to argue that the ALJ failed to address her symptoms in a function-by-function assessment. As the Commissioner acknowledges, "[s]ince the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined." Doc. 19 at 8 (quoting *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009)). In this inherently intertwined analysis, however, the ALJ never "clearly articulate[d]" why she rejected Ms. Anaya's alleged limitations in her abilities to walk, stand, and sit, and the Court is unable to "assess how the adjudicator evaluated [Ms. Anaya's] symptoms." SSR 16-3p, 2017 WL 5180304, at *8. This error requires remand.

The ALJ's paragraph about Ms. Anaya's physical activities contains no analysis of how the listed activities show that she is not limited in her abilities to stand, walk, and sit. *See* AR 26. The ALJ notes only that Ms. Anaya "regularly attends church meetings and outreach activities, take[s] care of her daughter, take[s] care of pets, and attend[s] her yard." AR 26. Ms. Anaya testified that she attends Jehovah's Witness meetings and halls for a couple of hours three times per week. AR 49. But she also testified that she was unable to sit at her hour-and-45-minute church meetings without getting up to walk around due to discomfort. AR 50. Ms. Anaya also testified that she did outreach activities for Jehovah's Witnesses for a couple of hours three times

13

per week. AR 69–70. She testified that this involves going out in a group of four, driving door to door, and pairs taking turns going to every other house. AR 70. She testified that they take breaks or stop early if they are tired. AR 51. She testified that caring for her dogs involves feeding them and letting them in and out of the door. AR 66. She testified that all she does in the yard is water her trees and pick up trash, for an hour at a time at most. AR 67. She testified that after she was hospitalized for her first incidence of blood clots in March 2013, the care she provided for her daughter consisted only of "making sure that she just got to her appointments and stuff." AR 65. The ALJ does not explain how these limited activities support completely discounting Ms. Anaya's claimed limitations in her abilities to stand, walk, and sit. Nor does the ALJ explain how these limited activities support her conclusion that Ms. Anaya is capable of light work. *See Williams v. Bowen*, 844 F.2d 748, 759 (10th Cir. 1988) ("limited activities in themselves do not establish that one can engage in light or sedentary work activity."); *see also Talbot v. Heckler,* 814 F.2d 1456, 1462 (10th Cir. 1987) (short-term work projects and intermittent driving was not equivalent to gainful activity); *Broadbent v. Harris,* 698 F.2d 407, 413 (10th Cir. 1983) (yard work, household tasks, car repairs, occasional car trips are not considered regular or prolonged activity). Absent a function-by-function analysis, the Court is unable to determine how the ALJ concluded that Ms. Anaya was able to do the requirements of light work: standing and/or walking for six hours and sitting for up to two hours in an eight-hour workday. SSR 83-10, 1983 WL 31251, at *6

The only other reason proffered by the ALJ for discounting Ms. Anaya's claimed limitations in her abilities to stand, walk, and sit is that "the medical evidence is inconsistent with [Ms. Anaya's] alleged limitations." AR 26. The Court recognizes that the agency's consultative examiner, Dr. Leslie Hopkins, opined that Ms. Anaya would be able to "sit, stand and walk

normally in an 8 hour workday with normal breaks." AR 376.  The Court also recognizes that the agency's reviewing physicians Drs. Armstrong and Schnute both found that Ms. Anaya was capable of doing a full range of light work—including standing and/or walking for about six hours and sitting for about six hours in an eight-hour workday.  AR 91–92, 106–08.  However, as discussed above, Ms. Anaya repeatedly reported that she was limited by pain and that she had limitations in her abilities to stand, walk, and sit.  In all cases in which symptoms, such as pain, are alleged, the RFC assessment must:

> \* Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms . . .
>
> \* Include a resolution of any inconsistencies in the evidence as a whole; and
>
> \* Set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.
>
> The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.

SSR 96-8p, 1996 WL 374184, at \*7.  The ALJ's decision fails to explain how Ms. Anaya's pain affects her ability to work and does not contain a function-by-function analysis of her abilities to walk, stand, and sit.  Without this analysis, the Court is unable to determine why the ALJ rejected Ms. Anaya's claims wholesale.[10]

---

[10] The importance of a function-by-function analysis in this case is further demonstrated by the ALJ's questioning of the vocational expert ("VE").  The ALJ asked the VE if it would "be acceptable for somebody to elevate their leg throughout the day in a work setting." AR 78.  The VE testified that light work required a person to be on their feet "six out of eight hours." AR 79.  He testified that sedentary jobs might allow a person to elevate their feet a maximum of six to twelve inches off the floor, since the claimant's legs must still fit under the work table.  AR 79.  The ALJ's decision does not explain why she rejected Ms. Anaya's claim that she frequently had to elevate her feet, and the VE's testimony suggests that Ms. Anaya would not be capable of light or even sedentary work if she needed to elevate her feet more than a foot off the floor.

Finally, the Commissioner's argument that the ALJ was not required "to tie evidence to each specific finding in the RFC," Doc. 19 at 9, is without merit. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8p, 1996 WL 374184, at *7. The ALJ simply failed to do this.

## VI. Conclusion

The ALJ failed to do a proper function-by-function analysis. The Court remands so that the ALJ can remedy this error. The Court does not reach Ms. Anaya's other argument, which "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that plaintiff's Motion to Reverse or Remand (Doc. 17) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent